# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HERMAN REED** | * | **CIVIL NO. 06-0544** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **BIOMET ORTHOPEDICS, INC.** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the motion to dismiss for lack of personal jurisdiction filed by third party defendant, Stuckenbrock Medizintechnik GMBH ("Stuckenbrock"). [rec. doc. 20].  Plaintiff, Herman Reed ("Reed"), and defendant and third party plaintiff, Biomet Orthopedics, Inc. ("Biomet"), have filed opposition. [rec. docs. 22 and 26].  For those reasons set out below, it is recommended that the Motion to Dismiss be **DENIED**.

## BACKGROUND

The instant case is a product liability action by Reed to recover damages from Biomet for alleged personal injuries caused by its defective product, hip screws, which were surgically placed in plaintiff's hip in June 2004. [rec. doc. 1].  Biomet filed a third party demand against Stuckenbrock, the alleged actual manufacturer of the hip screws.  [rec. doc. 4].  The parties do not dispute that the hip screws in question were actually manufactured by Stuckenbrock.

The record reveals that Stuckenbrock is a medical manufacturing business located in Germany, which does not have an office or other place of business in the United States and has never been registered, licensed or qualified to do business in the United States. [*See* rec. doc. 20-3, affidavit of Donat Stuckenbrock, ¶¶  4, 17-18, 22].  Further, Stuckenbrock has no sales or

other employees in the United States, and has no "registered agent" for marketing, sales or service of process in the United States. [*Id*. at ¶ ¶ 20, 21].  Stuckenbrock owns no property in the United States. [*Id*. at ¶ 19].

By "Distribution Agreement" dated September 1, 1998, Stuckenbrock "appointed" a Virginia company, Implant Distribution Network, Ltd. ("IDN"), "as its exclusive distributor" for its products, including the hip screws at issue in this litigation.  [*See Id.* at ¶ 5; rec. doc. 20-3, Distribution Agreement ¶ 1.1, 2]. IDN was granted exclusive distribution rights for "the territory of the USA and Canada".  [*Id*. at ¶ 2].  Pursuant to the Distribution Agreement, IDN is obligated to "do its utmost to sell the Contractual Products in the Territory" and "employ sufficient sales staff" to sell said products. [*Id*. at ¶ 4.1].

In return, Stuckenbrock is to "assist" IDN in training its sales staff "through catalogs, leaflets and further sales assistance materials (e.g. product information certificates) ... includ[ing] modification of such materials by Stuckenbrock for the US market." [*Id*. at ¶ 4.3]. The Distribution Agreement further provides that IDN may only purchase Stuckenbrock products and may not distribute competing products without Stuckenbrock's written consent. [*Id*. at ¶ 5].  Stuckenbrock has never directly contracted to distribute its products in the United States, and, in fact, is contractually prohibited from doing so. Stuckenbrock does not control the sale or distribution of its products in the United States, as the contract between the parties stipulates that such distribution is exclusively to be done by IDN. [*Id.* at ¶ 1.4; affidavit ¶ ¶ 9-12].  Stuckenbrock sold products to IDN between 2004 and 2006 valued in excess of $5

million, pursuant to this agreement. All of these products were delivered to IDN "exworks", Stuckenbrock's factory in Germany. [affidavit, ¶ ¶ 27, 6 and currency converter http://finance.yahoo.com].

By "Supply Agreement", Biomet agreed to purchase Stuckenbrock products, including the hip screws at issue in this litigation, exclusively from IDN, and IDN likewise agreed to sell these products exclusively to Biomet.[1] [rec. doc. 26-2, "Supply Agreement", ¶ 2 and ex, "A" thereto].   In order to effectuate this "Supply Agreement", IDN agreed to purchase products from Stuckenbrock and to supply Biomet with sufficient quantities of those products to meet the needs of its customers. [*Id.* at ¶ 3(b)].  Biomet agreed to label all products as made in Germany, and acquired an exclusive right and license to use Stuckenbrock's trademark (VHS) in the United States. [*Id.* at ¶¶ 3(c), 7].  Recognizing IDN's investment in establishing a supply arrangement with Stuckenbrock, Biomet agreed to pay IDN a lump sum fee following execution of the Agreement. [*Id.* at ¶ 4].

The Supply Agreement was later amended to expand the scope of the Agreement to include additional Stuckenbrock products.  [*see* rec. doc. 26-2, Second Amendment of Supply Agreement and Third Amendment of Supply Agreement].  These amendments also required Biomet to provide IDN with information and a technical advisor for phone consultation so that Stuckenbrock could manufacture a product for Biomet according to Biomet's specifications,

---

[1]The original "Supply Agreement" was with AVR Orthopedics, Ltd.  However, after AVR Orthopedics changed its corporate name to Implant Distribution Network, Ltd., an "Amended Supply Agreement" was confected to reflect the corporate name change. [*See* rec. doc. 26-2, Amendment of Supply Agreement and cover letter thereto].

under the assurance that Stuckenbrock would not use the information provided by Biomet to manufacture the product for distribution by anyone other than Biomet. [*Id.* at Second Amendment ¶ B, Third Amendment ¶ ¶ E and F].  The Third  Amendment also required Biomet to be responsible for regulatory compliance in the United States and Canada for Stuckenbrock's products. [*Id.* at 17(a) and (b)].

## LAW AND ANALYSIS

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv n' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

To exercise personal jurisdiction over a nonresident defendant, two requirements must be met. *Dickson Marine Incorporated v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999). First, the nonresident defendant must be amenable to service of process under the forum State's jurisdictional long-arm statute.  *Id.*  Second, the assertion of *in personam* jurisdiction must be consistent with the Fourteenth Amendment's Due Process Clause.  *Id.*  Louisiana's long-arm statute was specifically amended to permit service of process to the full extent permitted by the due process clause.  *Id.*; *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

4

Thus the statutory and constitutional inquiries merge.  *Dalton*, 897 F.2d at 1361.

The Due Process Clause of the Fourteenth Amendment guarantees that no court may exercise *in personam* jurisdiction over a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state.  *Luv n' care, Ltd.,* 438 F.3d at 469 *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction may be general or specific.  *Id.* Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Id. quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id. quoting Helicopteros Nacionales,* 466 U.S. at 414.

The constitutional requirements for specific jurisdiction are satisfied by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Id. quoting Int'l Shoe*, 326 U.S. at 316.   The Fifth Circuit has consolidated the personal jurisdiction analysis for specific jurisdiction into a three-step inquiry: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id. citing Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir.2002) *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85

L.Ed.2d 528 (1985).

To determine whether a foreign business has "minimum contacts" with the forum state, federal courts must identify some act whereby the business "purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws." *Id.* at 469-470 *citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A single purposeful contact may confer jurisdiction. *Id. citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The defendant's conduct must show that it "reasonably anticipates being haled into court" in the forum state. *Id*. at 470 *citing World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Likewise, a defendant may permissibly alter its behavior in certain ways to avoid being subject to suit in a given forum. *Id*.

Once a plaintiff establishes minimum contacts, the burden of proof shifts to the foreign defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Nuovo Pignone*, 310 F.3d at 382 *citing Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999); *See also Luv n' care, Ltd.*, 438 F.3d at 473. "It is rare to say the assertion is unfair after minimum contacts have been shown."  *Wein Air,* 195 F.3d at 215 *citing Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995). Thus, the defendant must make a "compelling case."  *Nuovo Pignone*, 310 F.3d at 382 *citing Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.  Factors to consider include:  (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in

the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.  *Id. citing Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir.1996);  *See also Luv n' care, Ltd.,* 438 F.3d at 473.   Stated in other terms, "when a controversy is related to or 'arises out of' a defendant's contacts with the forum" the court must examine the essential foundation of *in personam* jurisdiction, that is, the "relationship among the defendant, the forum, and the litigation."  *Bean Dredging*, 744 F.2d at 1085 *quoting Helicopteros Nacionales*, 104 S.Ct. at 1872 *quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).  Among the inquiries examined is "whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." *Id. citing Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir.1982).

In this case, Biomet and Reed contend that minimum contacts exist by virtue of Stuckenbrock's placement of its products into the stream of commerce which were destined for distribution across the United States in accord with the Distribution Agreement between Stuckenbrock and IDN and the Supply Agreement between IDN and Biomet, which had the effect of directing both IDN and Biomet to distribute Stuckenbrock's products as broadly as possible into the United States and Canadian markets, without limitation.

Biomet further argues that given this distribution arrangement, the exercise of personal jurisdiction over Stuckenbrock does not offend traditional notions of fair play or substantial justice.  I find these arguments well founded and supported by controlling Fifth Circuit jurisprudence. *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir.1980);  *Bean*

7

*Dredging Corp. v. Dredge Tech. Corp*., 744 F.2d 1081, 1085 (5th Cir.1984).  *See also Johnson v. Galliano*, 2004 WL 287369 (E.D.La. 2004).

Initially, the undersigned notes that the Fifth Circuit has consistently held that placing a product into the stream of commerce, where the defendant knows or should know that the product will ultimately reach the forum state,  rises to the level of "purposeful availment."  *Luv n' care, Ltd.*, 438 F.3d at 470; *see also Oswalt, Bean Dredging* and *Johnson, supra*.  Moreover, the Fifth Circuit has consistently held that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction, if the defendant's product made its way into the forum state while still in the stream of commerce." *Id. citing Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir.1993) *citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) and *Bean Dredging Corp. v. Dredge Tech. Corp*., 744 F.2d 1081 (5th Cir.1984).

This Fifth Circuit position is based on  *World Wide Volkswagen,* which holds that a state does not offend due process by exercising jurisdiction over an entity that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id. citing World Wide Volkswagen*, 444 U.S. at 298.  Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state.  *Id*.  The Fifth Circuit has therefore declined to follow the suggestion of the plurality in *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026, that some additional action on the part of the defendant, beyond foreseeability, is necessary to

8

"convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."[2] *Id*.

In *Nuovo Pignone v. Storman Asia M/V,* the Fifth Circuit noted that courts have applied the stream of commerce principle to allow the assertion of personal jurisdiction over nonresident defendants that send a defective product into a forum state.  *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 380 (5th Cir.2002). "Where a nonresident's contact with the forum state 'stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state."  *Id. citing Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 374 (5th Cir.1987).

The court went on to state that "this court has taken a relatively expansive view of the stream-of-commerce principle by requiring only 'mere foreseeability' that a defendant might be haled into court because it has purposely availed itself of the privileges of conducting business in the home forum; we have not required that a defendant 'purposely direct' its activities toward the forum." ' *Id*. at 381 n. 7 *citing Ruston Gas*, 9 F.3d at 419.

---

[2]The *Asahi* plurality listed the following as possible additional actions that would evidence an intent to serve the market of the forum state: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

In *Bean Dredging Corp. v. Rogers-Olympic Corp*., the Fifth Circuit held that personal jurisdiction existed over a foreign manufacturer of steel castings because the manufacturer introduced the castings into the stream-of-commerce via a distribution system not controlled by it. *Bean Dredging*, 744 F.2d at 1085.  In so holding, the court noted that "the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state ... and ... even activities outside one state can fulfill this requirement if they have reasonably foreseeable consequences within the state." *Id*. at 1083-1084 *quoting Quasha v. Shale Development Corp*., 667 F.2d 483, 488 (5th Cir.1982).  Moreover the court quoted *World-Wide Volkswagen,* noting that,

> "... if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others."   (emphasis added)

 *Id*. at 1084 *quoting World-Wide Volkswagen*, 444 U.S. at 297-98.

The *Bean Dredging* court noted that the foreign manufacturer of the steel castings made no attempt to limit the states into which the castings would be sold and used.  *Id*. at 1085.  Moreover, the court noted that the manufacturer desired to reach as broad a market as possible. *Id*.  The *Bean Dredging* court therefore found that "even though [the foreign manufacturer] 'did not originate the distribution system and [does] not control it, [the company] did place the [steel castings] in and move them along a stream of commerce destined for retail sale [in

finished products] throughout the United States." *Id.* at 1085 *citing Nelson*, 717 F.2d at  1126.

Accordingly, minimum contacts with the forum state was established.

The *Bean Dredging* court further found that the exercise of personal jurisdiction over

the foreign defendant was fair and reasonable, "because the product was used in Louisiana,

because the defects surfaced in Louisiana, because the ... injury ha[d] befallen a resident of

Louisiana, and because the court ha[d] not dismissed the remaining litigation in Louisiana,

[and] that state [thus had] an interest in providing a forum for th[e] suit." *Id*. at 1085.  The Fifth

Circuit was therefore "compelled" to hold that it was not "unreasonably inconvenient" for the

foreign manufacturer to defend the suit in Louisiana and that the maintenance of the suit did

not offend "traditional notions of fair play and substantial justice." *Id.* at 1085-1086 *quoting*

*Int'l Shoe*, 326 U.S. at 316 *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85

L.Ed. 278 (1940). Accordingly, the exercise of personal jurisdiction was proper.

With respect to distribution of the product, the court, in *Bean*, favorably and extensively

cited the Seventh Circuit's decision in *Nelson v. Park Industries, Inc*., 717 F.2d 1120, 1125-26

(7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984).  In that

case, a flannel shirt had ignited when it came in contact with a cigarette lighter flame, causing

severe  burns. The Hong Kong manufacturer was held to be subject to suit in Wisconsin,

because it had placed the shirt in the stream of commerce.   Citing *Nelson*, the court in *Bean*

said:

> The *World-Wide Volkswagen* Court's recognition of a distinction among the
> various entities that might compose a distribution system of a product is pivotal

to the decision in this case .... The scope of the foreseeable market served by those defendants and of the benefits those defendants derived from the sale of the product was narrow. In contrast, the relevant scope is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market. Such manufacturers and distributors purposely conduct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market.

*Id.* at 1084 *quoting Nelson*, 717 F.2d at 1125-1126.

Similarly, in *Oswalt v. Scripto,* the Fifth Circuit upheld the District Court's exercise of the its jurisdiction over a foreign manufacturer of lighters that, pursuant to a distribution agreement, delivered the lighters to an exclusive distributor for dissemination throughout the United States. The facts of the *Oswalt* case are strikingly similar to those presented herein. In *Oswalt*, the Japanese lighter manufacturer did not have any office, place of business, servant, employee or director in the United States. There was no evidence in the record that the foreign manufacturer had ever done business in the United States. However, the manufacturer had an agreement with an American company, Scripto, whereby Scripto was appointed as the exclusive distributor of the lighters in the United States. Pursuant to the plan of distribution, the lighters, which were manufactured and assembled in Japan, were sold and delivered to Scripto in Japan. Scripto then placed the lighters in commerce for sale to the public in the United States. One of those lighters, purchased by the plaintiff in Texas, allegedly malfunctioned and injured the plaintiff. *Id*. at 196-197, 198.

12

The *Oswalt* court held that the Japanese manufacturer "did have reason to know or expect that the cigarette lighter would reach Texas" because the manufacturer sold millions of lighters each year "to Scripto pursuant to a distribution system which made Scripto the exclusive distributor in the United States ...."  *Id.* at 198.  The manufacturer "delivered millions of the lighters to Scripto with the understanding that Scripto would be the exclusive distributor in the United States and that Scripto would be selling the lighters to a customer with national retail outlets."  *Id.* at 199.

Further, there was nothing in the record that indicated that the manufacturer desired to limit the states within which the lighters would be sold, or more specifically, that the lighters not be sold in the forum state, Texas.  *Id.* at 199-200.  To the contrary, "the record show[ed] that [the manufacturer] had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states." *Id.* at 200.  Therefore, the court in *Oswalt* found that these facts placed the case squarely within the coverage of *World-Wide Volkswagen,* which had indicated that the court's exercise of its jurisdiction over a foreign manufacturer is constitutional when that manufacturer utilizes a distribution network in the United States thereby making efforts to serve *indirectly* the market for its product in the forum state. *Id.*

In making this determination, the Fifth Circuit expressly  rejected the defendant's argument that it had no actual knowledge that its product would reach the forum state, finding no difference between a manufacturer who actually knows its product will reach the forum state and one who should have known in the exercise of "common sense" that its product would be distributed in the forum state.  *Id.* at 200-201.  Since the commercial transactions at

issue gave rise to a "reasonable inference" that the product would be used and consumed in the

forum state, it did "not matter that the purchase was made from an independent middleman or

that someone other than the defendant shipped the product into [the forum] state." *Id.* at 202.

In sum, because the Japanese manufacturer utilized a distribution system for its product, which

included an exclusive distributor in the United States, the Fifth Circuit found that the Japanese

manufacturer should have known that its products would reach the forum state in the normal

course of the distribution chain.  *Id.*  Accordingly, the exercise of *in personam* jurisdiction was

proper.

Relying on the above cases, in *Johnson v. Galliano Marine Serv., Inc.*, 2004 WL

287369 (E.D.La. 2004), Judge Barbier of the Eastern District of Louisiana, denied a third party

defendant's motion to dismiss in a products liability action under facts similar to those

presented in the instant case.  In *Johnson*, the plaintiff was injured by a device manufactured by

the third party defendant. The manufacturer, a Swedish corporation, sold its products in the

United States through an exclusive distributor, as Stuckenbrock did here. Acknowledging the

Fifth Circuit's "expansive" view of the stream of commerce doctrine, Judge Barbier held that

the court had specific  jurisdiction over the manufacturer because the product was delivered

into the stream of commerce with the expectation that it would be purchased or used by the

consumers in Louisiana.  The court explained that "[l]ike *Bean Dredging* and *Oswalt*, [the

manufacturer] did not desire to limit the distribution of its products and instead knew that [its

exclusive distributor] would sell the products within the United States."  Thus, minimum

contacts with the forum state existed.

Furthermore, the court found that it was not unreasonable or unfair to require the foreign manufacturer to defend itself in a Louisiana court.  This was so because the alleged injuries sustained by plaintiff arose out of an accident that occurred in Louisiana and there appeared to be no conflict between the interests of Louisiana and other states.  *Id*. at 4. Moreover, the court found that although it may greatly burden or inconvenience the Swedish manufacturer to defend itself in the United States, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant." *Id. citing Asahi*, 480 U.S. at 114-115.

Applying the Fifth Circuit's "mere foreseeability" test to the facts of this case, and  in light of the Distribution and Supply Agreements and principles set forth above, the undersigned concludes that Stuckenbrock's contacts with Louisiana are sufficient to withstand constitutional scrutiny.  Like the manufacturers in *Bean Dredging*, *Oswalt* and *Johnson*, Stuckenbrock introduced the hip screws into the stream-of-commerce via a distribution system, which, like *Oswalt* and *Johnson*, specifically included an exclusive distributor in the United States, without in any way limiting the states into which the hip screws would be distributed, sold and subsequently used.  To the contrary, the Distribution Agreement between Stuckenbrock and IDN obligated IDN to "do its utmost" to sell Stuckenbrock products within its Territory, that territory being the United States and Canada.  Further, there is nothing in the record to indicate that Stuckenbrock attempted in any way to limit the states in which the hip screws could be sold, and more specifically, the agreement is in no way structured to prohibit the sale of

15

products in Louisiana.  To the contrary, the record demonstrates that Stuckenbrock had every

reason to believe that its products would be sold to a nationwide market, that is, in any or all

states including Louisiana.[3]  *Oswalt*, 616 F.2d at 200.  Stuckenbrock's conduct therefore leads

to the conclusion that it should have "reasonably anticipate[d] being haled into court" in

Louisiana. *Luv n' care, Ltd*. at 470 *citing World Wide Volkswagen, supra.*

      Moreover, while Stuckenbrock asserts that it never "directly" sold in the United States,

it is clear that the Distribution Agreement was confected to accomplish the sale, albeit

*indirectly*, of as many Stuckenbrock products as possible within the United States.  This is

evidenced by the prohibition by Stuckenbrock against the sale by IDN of any competing

products of other manufacturers, as well as Stuckenbrock's contractual obligation to assist IDN

in training its sales staff, going so far as to modify sales assistance materials, such as catalogs

and leaflets, "for the US market."  Stuckenbrock's attempts to reach the United States market is

further supported by the Amended Supply Agreements contained in the record, in which it is

clearly provided that Stuckenbrock manufacture a product for Biomet according to Biomet's

specifications for nationwide distribution, utilizing the existing distribution chain. Such

indirect  efforts to serve the Unites States market is more than sufficient support for the

exercise of this court's *in personam*  jurisdiction.  *See World-Wide Volkswagen, Bean*

*Dredging, Oswalt, Johnson, supra.*

_____

[3]Stuckenbrock's reliance on a Tenth Circuit case *Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd*, 385 F.3d 1291 (10th Cir. 2004)) is not well taken, as it appears that the Tenth Circuit has not adopted the mere foreseability test as has the Fifth Circuit.  The other case cited by Stuckenbrock, *Hardware Resources, Inc. v. JFH Corporation*, 2006 WL 1984706 (W.D.La. 2006) is inapposite as that case is a copyright infringement case which does not involve a distribution agreement intended to reach the forum's market.

Additionally, the alleged lack of actual knowledge by Stuckenbrock that its product would reach Louisiana does not change this result.  That precise argument was expressly rejected by the Fifth Circuit in *Oswalt;* there is no difference between a manufacturer who actually knows its product will reach the forum state and one who should have known in the exercise of "common sense" that would be the case.  *Id.* at 200-201.  Under the Distribution Agreement and the various Supply Agreements existing in this case, it can be reasonably inferred that Stuckenbrock should have known, or should have been aware, that its products could make their way into Louisiana after being placed, without restriction, into the stream of commerce in the United States.  This is true even though Stuckenbrock did not control the distribution of its products throughout the United States, but instead employed the use of independent middlemen.  *See Bean Dredging, Oswalt, supra*.

Nor can this court accept Stuckenbrock's argument that this court lacks jurisdiction because of the alleged transfer of title in Germany upon the sale of the products to IDN.  The Fifth Circuit has held that jurisdiction "'does not depend on the technicalities of when title passes; rather, jurisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties."  *Luv n' care*, *Ltd.*, 438 F.3d at 471 *citing Oswalt*, 616 F.2d at 197 n. 8.  The case cited by Stuckenbrock on this point, *Starfleet Marine Transportation v. Kobelt*, 2006 WL 3087171 (E.D.La. 2006) is inapposite because the case did not involve sales to an exclusive distributor of the products pursuant to an ongoing distribution agreement which targeted the forum, but rather involved

17

the sale of a sole vessel pursuant to a vessel construction contract which was negotiated, executed, performed and delivered entirely outside the forum state. That the vessel could sail in Louisiana's waters by the unilateral action of its subsequent owners was simply inadequate for the assertion of *in personam* jurisdiction in that case.

Finally, to the extent the Stuckenbrock suggests that it derived no economic benefit from sales in the United States, or Louisiana, that claim is without merit.  It is clear that Stuckenbrock derived substantial revenue (over $5 million in the relevant two year period) from its sale of products bound for distribution in the United States, the intended market, pursuant to the contractual arrangements existing in this case.  Thus, Stuckenbrock's sale of its products to IDN has a clear and direct impact on Stuckenbrock's revenues.

Because minimum contacts exist in this case, this court will briefly address whether the plaintiff's cause of action arises out of, or relates to, the defendant's forum-related contacts.[4] Under the facts presented herein, this court has found that Stuckenbrock directed its activities toward Louisiana by entering into an exclusive Distribution Agreement with IDN for the entire United States and Canadian markets without restriction.  Reed asserts claims for damages resulting from an allegedly defective Stuckenbrock product which traveled through the stream of commerce from Germany to Louisiana, through an unrestricted distribution chain aimed at the national market, the "start" of which is Stuckenbrock.  *Bean*, 744 F.2d at 1084, *quoting*

_____

[4]The Supreme Court has defined "specific jurisdiction" as the exercise of personal jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales*, 466 U.S. at 414 n. 8.  However, the Supreme Court has avoided general pronouncements on the nexus required to satisfy this "arise out of or relate to" prong of the due process inquiry.  *See Akro*, 45 F.3d at 1547.

*Nelson*, 717 F.2d at 1125.  Therefore, it is clear that plaintiff's claims necessarily arise out of, or relate to, Stuckenbrock's forum-related contacts.  Given these same facts, it is equally clear that Biomet's third party action against Stuckenbrock, in which Biomet incorporates the plaintiff's allegations as the basis for the third party demand, necessarily arises out of, or relates to, Stuckenbrock's forum-related contacts, regardless of whether the demand is for indemnity or contribution. [*See* rec. doc. 4, ¶ ¶ 2, 10].  This is not a case of a unilateral action by the plaintiff or the third party plaintiff to bring Stuckenbrock's products to the United States or Louisiana as Stuckenbrock suggests.  This is a case where Stuckenbrock, via its contractual agreements, targeted this forum as a focus of its contractually agreed upon distribution chain.  The connection between Stuckenbrock's allegedly defective product and its contacts with Louisiana are therefore more than sufficient to confer personal jurisdiction.

The undersigned also finds that this court's exercise of personal jurisdiction over Stuckenbrock is fair and reasonable and does not offend traditional notions of fair play and substantial justice.  In support of its argument that it would be unfair and unreasonable for it to be haled into court in Louisiana, Stuckenbrock merely restates its prior unsuccessful arguments regarding lack of personal jurisdiction.  Moreover, Stuckenbrock asserts, is in a conclusory fashion, that it would be "a burden to Stuckenbrock to have to defend this case in Louisiana" given that Biomet is "not in dire need of litigating any indemnity claim against Stuckenbrock in Louisiana."  On this showing, it is clear that Stuckenbrock has failed to carry its burden by making a "compelling case" against this court's exercise of specific personal jurisdiction over it.  *See Wein Air,* 195 F.3d at 215; *Nuovo Pignone*, 310 F.3d at 382.  Moreover, even if this

were not the case, although litigation in the United States may place a burden on Stuckenbrock, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wein Air,* 195 F.3d at 215 *citing Asahi*, 480 U.S. at 115; *Johnson, supra.*

Consideration of the relevant factors also leads to the conclusion that exercise of this court's jurisdiction over Stuckenbrock is fair and reasonable.  Reed, a resident of Louisiana, claims to have been injured in Louisiana by Stuckenbrock's allegedly defective product, which was distributed, sold and used in Louisiana.  His obvious interest in full and complete recovery is compelling.  The interests of Louisiana are also strong.  The hip screws in question were surgically placed in plaintiff's hip in Louisiana, the alleged defect in the screws surfaced in Louisiana when they failed after surgical implantation, and the injury alleged herein has befallen a resident of Louisiana.  Moreover, this court has not dismissed the main demand against Biomet, and therefore Louisiana has an interest in providing a forum for all issues presented in this litigation.  *See Bean Dredging*, 744 F.2d at 1085 (reasoning that "[b]ecause the product was used in Louisiana, because the defects surfaced in Louisiana, because the economic injury has befallen a resident of Louisiana, and because the court has not dismissed the remaining litigation in Louisiana, that state has an interest in providing a forum for this suit.").

Moreover, "where a product allegedly causes ... injury in Louisiana, it is in the interest of that state to have its courts mediate the dispute."  *Luv n' care*, *Ltd.,* 438 F.3d at 474. It is not

unreasonable to require Stuckenbrock to defend in Louisiana, when the company has availed itself of this state's market, albeit indirectly, regularly sending its allegedly defective products into the stream of commerce destined for distribution in the nationwide market. *See Id.*

Finally, it is in the interest of the interstate judicial system to litigate all issues arising from, or relating to, Reed's claim in the same forum, as such litigation in a single forum promotes efficient and effect resolution of controversies while conserving judicial resources.

Therefore, on the record before this court, the undersigned finds no overwhelming burden on Stuckenbrock that outweighs the legitimate interests of the plaintiff, the forum state or the interstate judicial system.  At most, Stuckenbrock may be inconvenienced by having to litigate in Louisiana.  However, that same inconvenience would be equally, if not more greatly, felt by Biomet if it were forced to litigate its claim in Germany.

For all of these reasons, the undersigned finds that the exercise of personal jurisdiction by this court over Stuckenbrock is fair and reasonable, and does  not offend traditional notions of fair play or substantial justice.

## CONCLUSION

Based on the foregoing, it is recommended that the motion to dismiss filed by third party defendant, Stuckenbrock, be **DENIED**.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING**

**THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING EITHER THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed March 6, 2008, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE